UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:11-cv-158-RJC

| | |
|---|---|
| JACQUES CRAIG FLOYD, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | |
| ) | |
| ADAM HERGENROTHER, ) | **ORDER** |
| DUANE TERRELL, ) | |
| ) | |
| Defendants. ) | |
| ) | |

**THIS MATTER** comes before the Court on a motion for summary judgment by Defendants Adam Hergenrother and Duane Terrell, (Doc. No. 16).

### I. PROCEDURAL BACKGROUND

On June 29, 2010, Plaintiff, a state court inmate currently incarcerated at Bertie Correctional Institution, filed this pro se action pursuant to 42 U.S.C. § 1983 against Defendants Adam Hergenrother and Duane Terrell. At all relevant times, Defendant Hergenrother was employed as a Security Threat Group Intelligence Officer at Marion Correctional Institution ("Marion"), located in Marion, North Carolina. At all relevant times, Defendant Duane Terrell was the Assistant Superintendent for Custody and Operations at Marion. In this action, Plaintiff contends that he was deprived of his First Amendment right to receive mail because Defendants rejected certain manuscripts mailed to Plaintiff by Plaintiff's Mother. Plaintiff further alleges that Defendants confiscated some of the manuscripts and damaged parts of others. Plaintiff is seeking $50,000 in punitive damages, $50,000.00 in nominal damages, and $50,000.00 for the replacement of his manuscripts.

On July 29, 2011, this Court ordered that Plaintiff's claims against Defendants were not clearly frivolous and ordered Defendants to answer the Complaint. (Doc. No. 3). On August 5,

2011, Defendants were served with process.  (Doc. No. 6).  On August 26, 2011, Defendants answered Plaintiff's Complaint.  (Doc. No. 7).  On November 14, 2011, Defendants filed their motion for summary judgment.  (Doc. No. 16).  On December 1, 2011, Plaintiff filed his response.  (Doc. No. 19).

## II.     FACTUAL BACKGROUND

### A.     Defendants' Summary Judgment Materials

Defendants' summary judgment materials include the pleadings and all attachments as well as the Affidavits of Defendants Terrell with Exhibit A, and Hergenrother with Exhibits A-E.  See (Doc. Nos. 17-1; 17-2).

#### 1.     Marion's Policy Regarding Publications Mailed to Inmates

At Marion Correctional Institution inmates may receive publications consistent with security, safety, rehabilitation, federal and state regulations on staff work environment, and DOC administrative regulations.  (Doc. No. 17-2: Terrell Aff. ¶ 5; Ex. A, § D.0108).  All publications received by inmates must be reviewed for compliance with the publications policy.  (Id. § D.0103).  The Superintendent of a prison facility or designee is required to approve or disapprove publications on a case-by-case or issue-by-issue basis.  (Id. § D.0102(b)).

Defendant Terrell is the Coordinator of the Publication Review Committee at Marion.  (Doc. No. 17-2: Terrell Aff. ¶ 6).  Defendant Terrell has designated several staff members to conduct a preliminary review of publications that inmates receive in the mail.  (Id.).  Defendant Hergenrother serves as a staff reviewer.  (Id.).  When Defendant Hergenrother is given material from the mail room staff to review, he takes the reviewed material to Defendant Terrell for a decision.  (Id.).  If Defendant Terrell is unavailable, Defendant Hergenrother takes the material to Captain Hubert Corpening.  (Id. ¶¶ 6-7; 13).

2. The DOC's Publication and Review Policy Relevant to Plaintiff's First Amendment Claim

DOC's Publication and Review Policy, Ex. A, § D.0100(a), states that inmates in close or medium custody levels may not receive any publications that are not from a legitimate source of published materials. (Doc. No. 17-2: Terrell Aff. ¶ 5; Ex. A, § D.0100(a)). The policy defines "publisher" to include "legitimate wholesale marketers and distribution centers for published materials.... including established retailers (Barnes & Noble, Borders, etc.), if selling published material is part of their business." (Id.). Section .0101(f) of the policy states that "[w]hen a portion of a publication is disapproved, the entire publication will be disapproved. There will be no attempt to remove or censor the disapproved material." (Id. § D.0101(f)).

3. The Mail Room at Marion Receives Copies of the Book Vendetta on February 15, 2011

Defendants have presented evidence showing that on February 15, 2011, the mail room at Marion received a package that had been mailed to Plaintiff from Plaintiff's mother, Saundra Clagett. (Doc. No. 17-1: Hergenrother Aff. ¶ 8). Defendant Hergenrother initially reviewed the package, which contained one typed copy and one handwritten copy of a book authored by Plaintiff entitled Vendetta.[1] (Id.). Defendant Hergenrother reviewed the contents of the package

---

[1] This same book had been mailed to Plaintiff from Rosedog Bookstore in Durham, North Carolina, during December 2010. (Doc. No. 17-1: Hergenrother Aff. ¶ 8; Doc. No. 17-2: Terrell Aff. ¶ 8). The book was about a person named B-Money, a leader of the South Side Blood gang in Durham, North Carolina. After reviewing the book's contents, Defendant Hergenrother submitted the book to Defendant Terrell for rejection based on DOC's Publication Review policy, Chapter D, which prohibits "material which is written for or supports the activities of a validated Security Threat Group; or material which in any way supports, incites, promotes, encourages or advocates any type of gang activity by pictorials or writings or sign gang language or insignia." (Doc. No. 17-1: Hergenrother Aff. ¶¶ 4; 5; Doc. No. 17-2: Terrell Aff. ¶¶ 5, Ex. A, § D .0109(J)). The Publication Review Committee ultimately determined that

3

and took the items to Captain Corpening, who then reviewed the books. (Doc. No. 17-2: Terrell Aff. ¶ 9). Defendant Terrell subsequently explained to Captain Corpening that, based on his training and review of the publications policy, the books had to be sent to Plaintiff by a publisher and not a family member, and it did not matter whether the books were handwritten or typed. (Id.). Consequently, Defendant Terrell disapproved the package. (Id.).

Defendant Hergenrother then told Plaintiff that the books were being rejected pursuant to the publication policy because they were mailed by a member of Plaintiff's family and not a legitimate publisher. (Doc. No. 17-1: Hergenrother Aff. ¶ 8). Specifically, the disapproval form states that the publication was disapproved because it was "from a source that is not a legitimate marketer, and/or distributor of published material" and "[c]ontents of the box is a written script of a book called Vendetta that was published by Inmate Floyd. Contents [were] sent by a family member not a distributor or publisher." (Doc. No. 17-1 at 11: Ex. B).

Defendant Hergenrother explained to Plaintiff that he could appeal the decision and send the package to the Committee, send the package to an alternate address at his own expense, or he could have the package destroyed. Plaintiff chose to send the package back to his mother. (Doc. No. 17-1: Hergenrother Aff. ¶ 9). Plaintiff indicated his choice and signed the Notice to Inmate of Publication Source Disapproval & Appeal/Waiver Form. (Doc. No. 17-1: Hergenrother Aff. ¶¶ 9-10, Ex. B). Defendant Hergenrother then mailed the package back to Plaintiff's mother. (Doc. No. 17-1: Hergenrother Aff. ¶¶ 11-12, Exs. C; D). According to Defendants, the package was returned to Plaintiff's mother in the same condition in which it was received. (Doc. No. 17-1: Hergenrother Aff. ¶¶ 13-14, Ex. E).

---

Plaintiff could keep one copy of the book.

Subsequently, Plaintiff filed an administrative grievance instead of appealing to the Publications Review Committee. See (Doc. No. 17-1 at 14, 17). The grievance was subsequently dismissed for lack of supporting evidence. See (Id. ¶ 13).

B.  Plaintiff's Summary Judgment Materials

Plaintiff's summary judgment materials include Plaintiff's Declaration; an affidavit from his mother Saundra Clagett; and Plaintiff's Statement of Disputed Factual Issues. See (Doc. Nos. 19-2; 19-3; 19-4).

The affidavit of Plaintiff's mother Saundra Clagett states that on around February 12, 2011, she mailed a box of manuscripts authored by Plaintiff to Plaintiff at Marion. (Doc. No. 19-4: Clagett Aff. at 1). Clagett further states in her affidavit that the package included the following manuscripts: Vendetta, Vendetta 2, Misunderstood, Hood Love, and White Dragon-Black Heart. (Id.). She states that all of the manuscripts were handwritten except for one, titled Misunderstood, and none of them had resulted in a published work other than Vendetta. (Id.). Clagett states that Plaintiff had sent her the manuscripts so that she could proofread them and that she had also sent Plaintiff a letter in the package.

In addition, Clagett states that on around February 24, 2011, she received a package from Plaintiff, that she kept it just as she received it, and that she mailed the package to Plaintiff when he was moved to Bertie Correctional Institution. (Id.). Clagett states that Plaintiff called her a few days later from Bertie to tell her that some of the manuscripts were missing from the package. (Id.).

Plaintiff has also submitted his own Declaration in response to Defendants' motion for summary judgment. Plaintiff contends that his handwritten manuscripts were not publications; instead, Plaintiff asserts the package of manuscripts should have been treated as regular mail and

5

scrutinized for contraband and delivered to Plaintiff. (Doc. No. 19-2 at 3: Floyd Decl. ¶ 9). Plaintiff contends that his mail should have been subjected to Chapter D.0309 of the prison's mail policies, titled "Inmate Use of Mail," rather than being subject to Marion's publications policies. (Id.). Plaintiff contends that "handwritten manuscripts are not publications because publications are the end result of a manuscript, but not the manuscript itself. Publications have page designs, cover designs, and ISBN numbers." (Id. at ¶ 7).

### III. STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. The nonmoving party must present sufficient evidence from which "a reasonable jury could return a

verdict for the nonmoving party." Anderson, 477 U.S. at 248; accord Sylvia Dev. Corp. v. Calvert Cnty., 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" Ricci v. DeStefano, 129 S.Ct. 2658, 2677 (2009) (quoting Matsushita v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

**IV. ANALYSIS**

    A.    Exhaustion of Administrative Remedies

In support of their motion for summary judgment, Defendants first contend that Plaintiff's claim should be dismissed based on his failure to exhaust his administrative remedies under the Prison Litigation Reform Act ("PLRA").

It is undisputed that Plaintiff did not appeal Defendant Terrell's decision to the Publications Review Committee; instead, he only filed an administrative grievance. Defendants contend that because Plaintiff chose not to appeal to the Publications Review Committee, he failed to exhaust the administrative remedy available to him based on the Defendants' withholding of the manuscripts. Defendants contend that Plaintiff was familiar with the appeals process because he recently successfully appealed a prior decision regarding the same book.

In response to Defendants' arguments regarding exhaustion, Plaintiff contends that because his claim is a First Amendment violation based on Defendants' denial of his right to receive mail, he correctly filed an administrative grievance rather than appealing to the Publications Review Committee. Plaintiff further contends that he chose not to appeal the decision to the Publications Review Committee because Hergenrother told him that if he lost the

7

appeal he would not be able to receive any future packages from his mother. Defendant Hergenrother denies that he ever made such statement. (Doc. No. 17-1: Hergenrother Aff. ¶ 14).

The Court will assume for purposes of this review that Plaintiff exhausted his administrative remedies with respect to his First Amendment claim regarding the right to receive mail by filing an administrative grievance, as opposed to appealing to the Publications Review Committee. However, even so assuming, Plaintiff's First Amendment claim has no merit and Defendants are entitled to summary judgment for the following reasons.

      B.      <u>Prisoners' Rights to Receive Mail under the First Amendment</u>

Prisoners do not lose all of their constitutional rights upon conviction and incarceration. <u>Bell v. Wolfish</u>, 441 U.S. 520, 545 (1979). However, these rights may be curtailed in furtherance of the legitimate goals or objectives of the correctional institution. <u>Hudson v. Palmer</u>, 468 U.S. 517, 524 (1984). The First Amendment protects a prisoner's right to receive mail. <u>Thornburgh v. Abbott</u>, 490 U.S. 401, 407 (1989). Prison officials may regulate that right, however, as long as the regulation is "'reasonably related to legitimate penological interests.'" <u>Id.</u> at 409 (quoting <u>Turner v. Safley</u>, 482 U.S. 78, 89 (1987)); <u>Beard v. Banks</u>, 548 U.S. 521, 528 (2006) (citation and quotations omitted) (noting that "restrictive prison regulations [including restrictions on First Amendment rights] are permissible if they are reasonably related to legitimate penological interests and are not an exaggerated response to such objectives"). When evaluating the constitutionality of prison regulations, the courts must accord prison administrators "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." <u>Bell</u>, 441 U.S. at 547.

Courts are to weigh the following four factors in determining whether a prison regulation

is reasonably related to a legitimate penological interest: (1) whether there is a "valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it"; (2) "whether there are alternative means of exercising the right that remain open to prison inmates"; (3) "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally"; and (4) the "absence of ready alternatives" to the regulation. Turner, 482 U.S. at 89-90 (quotations omitted). Courts must conduct this analysis giving "substantial deference" to prison authorities. Frazier v. Dubois, 922 F.2d 560, 562 (10th Cir. 1990).

      C.      Plaintiff's First Amendment Claim Against Defendant Hergenrother

The Court first notes that summary judgment must be granted in favor of Defendant Hergenrother on the sole basis that Hergenrother did not make the decision not to allow Plaintiff to keep the manuscript. Defendants' summary judgment materials show that Defendant Hergenrother only received the materials for an initial review, and Defendant Terrell made the decision not to give Plaintiff the manuscript. Because Hergenrother did not make the decision regarding the manuscript, the Court will dismiss him as a defendant.

      D.      Plaintiff's First Amendment Claim Against Defendant Terrell

            1.      Application of the Prison's Publications Policy to the Manuscript Sent to Plaintiff in February 2011

The Court further finds that Plaintiff has failed to raise a genuine issue of material fact as to his First Amendment claim and Defendant Terrell is entitled to summary judgment as a matter of law. In a case involving similar facts, the U.S. Supreme Court held that the Bureau of Prison's policy of requiring that hardback books be sent directly from a publisher did not violate an inmate's First Amendment right to receive mail. See Bell v. Wolfish, 441 U.S. at 549. In

Bell v. Wolfish, inmates challenged a Bureau of Prisons rule that permitted inmates to receive hardback books from outside the institution only if the materials were mailed directly from the publisher or a book club.  The U.S. Supreme Court upheld the rule, finding that it was a "rational response" to "serious" security and administrative problems that were caused when inmates were allowed to receive hardback books from unidentified sources outside of the facility.  The Court explained that "[i]t hardly needs to be emphasized that hardback books are especially serviceable for smuggling contraband into an institution; money, drugs, and weapons easily may be secreted in the bindings" and "[t]hey also are difficult to search effectively." Id. at 551.

Although the Bell Court noted that it "express[ed] no view as to . . . [the portion of the rule] concern[ing] magazines or soft-cover books," id. at 550 n.31, the Court noted the "administrative difficulties posed by the necessity of carefully inspecting each book mailed from unidentified sources."  Id. at 551.  See also Jones v. Salt Lake County, 503 F.3d 1147, 1158-59 (10th Cir. 2007) (upholding the jail's ban on paperback books because it contained an exception for books sent directly from the publisher and allowed inmates to receive books from the jail library).

Here, the Court finds that Defendant Terrell's decision not to allow Plaintiff to receive the manuscript sent to him in February 2011 did not violate Plaintiff's First Amendment rights, as the prison's publications policy is clearly rationally related to the prison's security interest in preventing contraband and in maintaining efficiency, and the other Turner factors support a finding that the publications policy is constitutional.  Plaintiff contends, however, that Defendant Terrell misinterpreted the publications policy when applying it to the manuscript authored by Plaintiff.  According to Plaintiff, the requirement that publications must be sent from a publisher only applies to materials that have actually been published and not to handwritten manuscripts

10

like Plaintiff's. Plaintiff's contention is without merit, as Terrell's interpretation of the publications policy was reasonable. In any event, even if Defendant Terrell rejected the manual in error on this particular occasion, the error would not rise to the level of a constitutional violation. See Davis v. Scherer, 468 U.S. 183, 194 (1984) ("Officials sued for constitutional violations do not lose their qualified immunity merely because their conduct violates some statutory or administrative provision."); see also Woodward v. City of Worland, 977 F.2d 1392, 1399 (10th Cir. 1992) ("The Supreme Court has made it clear that liability under § 1983 must be predicated upon a deliberate deprivation of constitutional rights by the defendant. It cannot be predicated upon negligence.") (quotations and citations omitted) (emphasis in original). In sum, the Court finds that Defendant Terrell is not liable for violating Plaintiff's First Amendment rights by refusing to allow Plaintiff to have the manuscript mailed to him in February 2011.

        2.      Plaintiff's Contention that Defendants Confiscated or Damaged Parts or All of Certain Manuscripts that Plaintiff's Mother Sent Him in the Mail

In response to the summary judgment motion, Plaintiff next disputes Defendants' contention that only the Vendetta manuscript was in the package that the Marion mail room received on February 15, 2011. According to Plaintiff, his mother had mailed him five manuscripts that Plaintiff had authored and which his mother had edited for him; four of the manuscripts were handwritten and one was typed; and his mother also sent him a personal letter with the package. Plaintiff contends that this is a disputed issue of material fact.[2] Plaintiff

---

[2] The remaining issues that Plaintiff identifies as issues of disputed "facts" are not facts but are, instead, disputes as to legal conclusions, including (1) whether Plaintiff's self-authored, handwritten manuscripts were incorrectly rejected by Defendants' use of policy D.0100; (2) whether Plaintiff failed to exhaust his administrative remedies; (3) whether a First Amendment violation has been shown; (4) whether qualified immunity shields the defendant from claims for monetary damages; and (5) whether Plaintiff's self-authored, handwritten manuscripts should

11

Case 1:11-cv-00158-RJC   Document 22   Filed 06/11/12   Page 11 of 14

further contends that Defendants did not return the entire package to Plaintiff's mother, and that when his mother mailed the package to him at Bertie Correctional Institution parts or all of some of the manuscripts were missing. (Doc. No. 19-1 at 2).

The evidence does not support Plaintiff's contentions with regard to the alleged confiscation and destruction of parts of all of certain manuscripts received in the Marion mail room in February 2011. The record evidence shows that Plaintiff signed the disapproval form, which listed Vendetta as the only book that was in the package that Plaintiff's mother sent him. Plaintiff's grievance form, which mentions that the package sent to him included a letter and one manuscript, does not refer to or discuss the other manuscripts that he now claims that his mother mailed to him. Plaintiff has simply not provided any credible evidence to support his conclusory allegation that prison officials confiscated entire manuscripts or portions thereof from the package that Plaintiff's mother mailed him in February 2011. Furthermore, and most significantly, Plaintiff has produced absolutely no evidence whatsoever tending to show that Defendant Terrell had anything to do with the alleged destruction of some of Plaintiff's manuscripts. For all of these reasons, Plaintiff's First Amendment claim against Defendant Terrell regarding Plaintiff's right to receive mail is without merit.

In sum, Plaintiff has failed to raise a genuine issue of material fact as to whether Defendants violated his First Amendment right to receive mail, and Defendants are entitled to summary judgment as a matter of law.

   3.  Suit Against Defendants in their Official Capacities and Qualified Immunity

---

have been considered publications, general correspondence, or mail. See (Doc. No. 19-3 at 2).

In addition to finding that Plaintiff's First Amendment claim is without merit, the Court further finds that, to the extent Defendants are being sued in their official capacities, Plaintiff cannot recover monetary damages. See Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989) (noting that a suit against a state official or employee in his official capacity based on § 1983 constitutes a suit against the State). Furthermore, even if the Court were to find that a constitutional violation occurred, qualified immunity shields Defendants in their individual capacities from claims for monetary damages. Prison officials "generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In analyzing the issue of qualified immunity, the court must "identify the specific right that the plaintiff asserts was infringed by the challenged conduct, recognizing that the right must be defined at the appropriate level or particularity." Winfield v. Bass, 106 F.3d 525, 530 (4th Cir. 1997). Defining the applicable right in an abstract way "is inappropriate." Id. at 531. The Harlow objective standard "raises questions concerning the state of the law at the time of the challenged conduct–questions that can normally be resolved on summary judgment." Crawford-El v. Britton, 523 U.S. 574, 590 (1998). The test is whether the act was clearly forbidden, not whether in hindsight the action was wrongful. Rogers v. Pendleton, 249 F.3d 279, 286 (4th Cir. 2001).

Here, a reasonable prison official would not have thought that forbidding Plaintiff from keeping the manuscripts that his mother sent him was a violation of clearly established law. In other words, even if the Court assumes that Plaintiff's interpretation of the publications policy is correct–i.e., even if handwritten or typed, unpublished manuscripts are not "publications" within the meaning of the publications policy–Terrell's interpretation of Marion's publications policies

13

was reasonable. As other courts have observed, prisons have established policies regarding publications because of security concerns. See Jones, 503 F.3d at 1157. Whereas a letter is fairly easy to search for contraband, full manuscripts, including those sent to Plaintiff in this case, can easily hide contraband. Furthermore, searching a manuscript for hidden contraband is more time-consuming than opening a letter. Because the manuscript at issue here potentially invoked the same safety concerns as other publications, Defendant Terrell's rejection of the manuscript–and his assumption that the publications policy (rather than the prison's general mail policy) applied to the manuscript–was reasonable. In sum, assuming that a constitutional violation occurred, qualified immunity would nevertheless shield Defendants from Plaintiff's claim for monetary damages.

## V. CONCLUSION

In sum, for the reasons stated herein, Defendants are entitled to summary judgment on Plaintiff's claims.

**IT IS, THEREFORE, ORDERED** that Defendants' motion for summary judgment, (Doc. No. 16), is **GRANTED**, and this action is dismissed with prejudice.

Signed: June 11, 2012

Robert J. Conrad, Jr.
Chief United States District Judge

14